FILED
SCRANTON

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JUN 3 0 2014

PER _____
DEPUTY CLERK

CETEWAYO FRAILS,                        :
                                        :
            Petitioner                  :
                                        :
      v.                                : CIVIL NO. 3:CV-10-1971
                                        :
JON FISHER,                             : (Judge Kosik)
                                        :
            Respondent                  :

**M E M O R A N D U M**

Cetewayo Frails ("Petitioner"), a Pennsylvania state inmate currently

incarcerated at the State Correctional Institution at Smithfield, initiated this petition

for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on September 21, 2010.  He

challenges his 1999 Court of Common Pleas of Carbon County convictions for 2nd

Degree Murder, Robbery with the Intent to Inflict Serious Bodily Injury, Criminal

Conspiracy and Aggravated Assault. For the reasons that follow, the petition will be

denied.

## I.    Background & Procedural History

The following facts surrounding the murder of Tyrone Hill, a/k/a Corona, have

been extracted from the September 17, 1999 opinion issued by the Carbon County

Court of Common Pleas ruling on post-sentence motions filed by Petitioner.  These

facts are as follows:

During 1997 the prosecution's primary witness, Verna Russman, was a crack cocaine addict, selling drugs for Ramzee and V.A. N.T. 4/15/99 at 202-204. The drugs were sold primarily in Monroe County, id., and generated approximately $10,000.00 per week, which was shared by Ramzee, V.A., and the others involved in the drug trade, including Milligan, Frails and Boney. Id. at 207, 210 & 354. For her part, Verna received a place to stay and crack to support her habit. Id. at 210. In October of 1997, Verna began selling for Corona, who ultimately replaced V.A. after his incarceration. Id. at 206-208 & 213.

On Saturday, October 25, 1997, the day before the murder, Verna and Milligan spent the day selling drugs in Monroe County. Eventually, they met with the other co-defendants. Verna smoked crack cocaine and listened as Ramzee, Milligan, Frails and Boney planned to rob Corona of money and drugs the next day in order to cut into his drug territory. Id. at 224-226. Another witness overheard the portion of this conversation where the co-conspirators complained about someone intruding into their drug territory. N.T. 4/16/99 at 463-464.

Thereafter, Verna and Milligan returned to the Palmerton apartment, which they shared with several people, including Corona. N.T. 415/99 at 211. Verna left in Corona's vehicle to sell more drugs, while Milligan remained. Id. at 213 & 228-229.

During her trip, Verna was paged by Frails to transport him, Ramzee, and Boney to the Palmerton apartment to rob Corona as planned. Id. at 229-231. They arrived in the early morning of October 26, 1997, id., rousing both Corona and Milligan. Id. at 237. Boney sat on the floor and began playing a video game, while Frails guarded the door. Id. at 239. After exiting the room for a moment, Ramzee returned and shot Corona in the back of the head as Corona leaned down to retrieve his clothes. Id. at 238-242. As Corona started to fall, Frails pushed him backward, causing him to land face up on the floor. Drugs were taken from the victim's pockets by Frails and Ramzee. Id. at 242-243.

In the meantime, Milligan dragged an upset Verna from the room and told her to calm down, while all four guys appeared collected and unsurprised. Id. at 243-246 & 383-384. When allowed to return, Verna

saw Corona's body covered with blankets on the floor. Id. at 244. All then fled together, and Frails and Boney threatened Verna with harm to her family if she said anything about the killing. Id. at 246-246 & 248-249.

The crime scene was discovered by the landlord on the morning of the murder and was consistent with Verna's description. N.T. 4/13/99 at 131-133, 139-142 & 158-161. The police investigated, id. at 78, and an autopsy revealed that Corona died of a gunshot wound to the back of his head, consistent with the victim being in a bent over position. Id. at 30-32 & 34-38. Cocaine was also found with the victim. Id. at 102-104, N.T. 4/16/99 at 529. Corona's vehicle was eventually found in Brooklyn, id. at 585, containing microscopic hairs similar to those of Boney. N.T. 4/13/99 at 114-115, N.T. 4/16/99 at 585-588, N.T. 4/19/99 at 706-707.

The day following the murder, Verna contacted the police to tell them about the killing, and was subsequently arrested. N.T. 4/15/99 at 251, N.T. 4/19/99 at 782. At the time of trial, Verna had been in jail for approximately 18 months, charged with the same crimes as her co-defendants. N.T. 4/15/99 at 199-200. No promises had been made in exchange for her testimony. Id. at 250-52. She testified because she believed the killing should not have occurred and the truth needed to be told. Id.

At trial, Frails and Milligan asserted an alibi defense. Their friends and family testified that both were in Brooklyn, New York on Saturday night and Sunday, October 25 and 26, 1997. N.T. 4/19/99 at 730-33, 744-750 & 809-813; N.T. 4/20/99 at 847-852 & 859-863. The prosecution presented Verna's testimony placing all three Defendants at the scene of the crime. Several other witnesses placed them in Monroe County, which is adjacent to Carbon County, on the night before and/or the day of the murder, including Stella Russman, 4/15/99 at 434-438; Rebecca Bennett-Hoffman, N.T. 4/16/99 at 459-466; Anthony Bennett, id. at 493-494; Lakyia Bennett, id. at 556-557; and Kadias Murdaugh, id. at 571-574.

On April 21,1999, the jury found Defendants guilty of second degree murder, 18 Pa. C.S.A. §2501(a) & §2502(b), robbery, 18 Pa.C.S.A. §3701(a)(1), conspiracy, 18 Pa.C.S.A. §903(a)(1), and aggravated

assault, 18 Pa.C.S.A. 2702(a)(1).  All were sentenced to life imprisonment for felony murder and to consecutive sentences for robbery and criminal conspiracy.  On these latter two offenses, Frails received four to eight years and five to ten years, respectively, while Boney and Milligan each received six to twelve years and five to ten years, respectively.

(Doc. 25-2 at 2-6, Carbon Ct. Com Pl. Sept. 17, 1999.)

Following the denial of post-sentence motions on September 17, 1999,

Petitioner filed a direct appeal with the Pennsylvania Superior Court.  In the direct

appeal, the following grounds were raised:

> 1. Sufficiency of the evidence to support convictions
>
> 2. Verdict was against the weight of the evidence
>
> 3. Trial court error in denying a motion for change of venue
>
> 4. Trial court error in failing to adequately race qualify the jury panel
>
> 5. Trial court error in denying motion for severance
>
> 6. Trial court error in excluding an audiotape interview of Verna Russman
>
> 7. Trial court error in refusing to instruct the jury on the elements of manslaughter
>
> 8. Trial court error in sentencing with respect to merger

(Doc. 28-1, Pa. Super. Dec. 6, 2000.)

The judgment of sentence was affirmed on December 6, 2000, and a petition

for allowance of appeal was denied by the Pennsylvania Supreme Court on June 19,

2001.  Petitioner did not seek certiorari to the United States Supreme.

4

On June 5, 2002, Petitioner filed a pro se Petition for Post Conviction Collateral Relief ("PCRA").  Counsel was appointed, and on October 15, 2002, an amended PCRA petition was filed asserting grounds of ineffective assistance of counsel and prosecutorial misconduct.[1]  Thereafter, PCRA counsel filed no-merit letters and requested permission to withdraw.  The request was granted by the PCRA court and on June 4, 2003, the amended PCRA petition was denied without a hearing. On June 6, 2003, the PCRA court entered an amended order clarifying itself, and again denied the PCRA petition.

On appeal to the Pennsylvania Superior Court, the following grounds were raised:

>    1.  The lower court erred in allowing PCRA counsel to withdraw through the use of a "Finley" letter
>
>    2.  Did the lower court err in denying appellant an evidentiary hearing regarding his PCRA petition
>
>    3.  Was previous PCRA counsel ineffective in representing appellant in this PCRA action

(Doc. 28-3 at 3, Pa. Super. Mar. 17, 2005).  On March 17, 2005, the order of the

---

[1] In the original pro se and amended counseled PCRA petitions, the grounds asserted were that trial counsel was ineffective for failure to: cross-examine Verna Russman regarding her prior convictions, impeach Russman and other Commonwealth witnesses by introducing expert testimony regarding the effects of prolonged drug use on memory and perception and possible motives for fabrication, and conduct an independent investigation of the case.  Each petition also asserted that the Commonwealth engaged in prosecutorial misconduct by making inflammatory remarks about Petitioner during the trial. (See Doc. 30 at 6-9.)

PCRA court was affirmed. (Doc. 28-3.) On May 12, 2005, after the time to seek review before the Pennsylvania Supreme Court had expired, Petitioner learned of the Superior Court's denial of his PCRA from his counsel.

On June 28, 2005, Petitioner filed a pro se petition for allowance of appeal with the Pennsylvania Supreme Court seeking nunc pro tunc reinstatement of his appellate rights. While this petition was pending, Petitioner filed a second PCRA on April 28, 2006. On June 5, 2006, this second PCRA was dismissed as premature due to the pendency of Petitioner's nunc pro tunc appeal request still before the Pennsylvania Supreme Court.

On February 7, 2007, a third PCRA petition was filed. An amended counseled petition was thereafter submitted on July 19, 2007. A hearing on the petition was conducted on December 10, 2007. At that time, the issues identified in the amended PCRA petition were as follows:

> 1. Whether newly discovered evidence in the nature of a plea agreement which Petitioner claims existed between the Commonwealth and Verna Russman, one of Petitioner's co-conspirators, and which Petitioner alleges the Commonwealth failed to disclose, entitles him to relief on the basis of Brady v. Maryland[2] and its progeny
>
> 2. Whether Petitioner is entitled to have his original PCRA appellate rights reinstated nunc pro tunc on the basis of counsel's alleged ineffectiveness in timely consulting with him about the Superior Court's denial of his first PCRA petition, thereby depriving him of the

---

[2] See Brady v. Maryland, 373 U.S. 83 (1963).

opportunity to seek further review of that decision before the Pennsylvania Supreme Court.

(Doc. 28-4 at 3-4.)

On January 29, 2007, prior to the date of the hearing on the third PCRA, the Pennsylvania Supreme Court had denied Petitioner's request to pursue nunc pro tunc relief with respect to his first PCRA petition to permit him to proceed under the Post Conviction Relief Act.

The PCRA court issued a decision on the third PCRA on September 30, 2008. (Doc. 28-4, Carbon Ct. Com. Pl. Sept. 30, 2008). Following an extensive discussion, the court found that Petitioner's Brady claim was time-barred. (Id. at 7-13.) Beyond the time-bar, the court went on to state that the Brady issue also appeared to be previously litigated. In citing to Petitioner's first PCRA petition, as amended by counsel, while technically raised as an ineffective assistance of counsel claim therein, the court believed the claim to be couched in terms of "prosecutorial misconduct." Said issue was addressed and denied by the PCRA court, and thereafter was not one of the issues pursued on appeal to the Pennsylvania Superior Court. As such, even if the claim were not time-barred, to the extent it was now being pursued in the third PCRA, it was found to be waived.

After addressing the matters of timeliness and previous litigation with respect to the Brady claim, the PCRA court proceeded to engage in a merits analysis of said claim, finding it to be without merit in any event. (Id. at 15-23.) With respect to the

other issue raised in the third PCRA, the court denied Petitioner's request for leave to file a petition for allowance of appeal with the Pennsylvania Supreme Court nunc pro tunc.

On December 15, 2009, the Pennsylvania Superior Court reversed the PCRA court's September 30, 2008 order concluding that the PCRA court erred in refusing to allow Petitioner to file a petition for allowance of appeal with the Pennsylvania Supreme Court nunc pro tunc with respect to his first PCRA. (Doc. 30 at 22.)  The matter was remanded for the PCRA court to permit Petitioner to do so.  Because Petitioner was permitted to complete the litigation of his first PCRA petition, the Superior Court declined to address his remaining claims in the appeal, which were not raised in that first petition.  Such claims were dismissed without prejudice to his ability to raise them in a subsequent PCRA petition.  (Id.)

On February 2, 2010, the PCRA court reinstated Petitioner's appellate rights nunc pro tunc.  Petitioner thereafter filed his nunc pro tunc petition for allowance of appeal with the Pennsylvania Supreme Court on February 24, 2010.  On August 4, 2010, the Pennsylvania Supreme Court denied the petition for allowance of appeal.

A fourth PCRA petition was filed on September 13, 2010.  While the PCRA petition was pending, the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 was filed on September 21, 2010.  In the petition, Petitioner attempted to raise the issue of the "deal" given by the Commonwealth to Verna Russman (the

8

"Brady" issue), claiming that it was based on newly discovered evidence. This court

stayed the instant habeas petition pending exhaustion of the fourth PCRA petition.

On December 29, 2010, an order was issued denying the petition as untimely.[3] The

Pennsylvania Superior Court affirmed this decision on November 23, 2011.

On February 28, 2012, Petitioner filed a motion to re-open the instant federal

habeas corpus proceedings. This motion was granted on May 14, 2012. Counsel

entered an appearance and filed an amended federal habeas corpus petition on July

23, 2012. (Doc. 19.) This document serves as the standing habeas corpus petition in

this matter. (Doc. 22.) In the petition, the following grounds are raised:

> (1) The Commonwealth committed prosecutorial misconduct and violated
> Petitioner's Sixth and Fourteenth Amendment rights by failing to disclose the
> existence of an agreement between the Commonwealth and Russman related to
> her testimony against her co-defendants.

> (2) Petitioner was denied his rights under the Sixth and Fourteenth
> Amendments to the U.S. Constitution in that the panel from which Petitioner's
> jury was selected, was not representative of a fair cross section of the
> community, thereby denying Petitioner equal protection of the law and a fair
> trial.

> (3) Petitioner was denied his rights under the Sixth and Fourteenth
> Amendments when the trial court abused it's discretion by excluding relevant
> and material audiotape evidence.

(Doc. 19, Am. Pet.)  Following an enlargement of time, a response to the habeas

---

[3] This order was thereafter vacated and an amended order filed on January 10, 2011 to allow for the addition of the "Notice to Petitioner" as required by Pa. R. Crim. P. 907(4).

petition was filed by Respondent on April 18, 2013. (Doc. 25.) A traverse was filed on behalf of Petitioner on May 7, 2013. (Doc. 26.) A reply to the traverse was submitted by Respondent on May 14, 2013. (Doc. 27.)

## II.   Timeliness of Petition

A petition filed under § 2254 must be timely filed under the stringent standards set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pub.L. No. 104-132, 110 Stat. 12214 (April 24, 1996). See 28 U.S.C. § 2244(d)(1). A state prisoner requesting habeas corpus relief pursuant to § 2254 must adhere to a statute of limitations that provides, in relevant part, as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. . . .
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2); see Jones v. Morton, 195 F.3d 153, 157 (3d Cir. 1999). Thus, under the plain terms of § 2244(d)(1)(A), a state court criminal judgment does not become final until appeals have been exhausted or the time for appeal has expired. See Nara v. Frank, 264 F.3d 310, 314 (3d Cir. 2001).

Following his conviction and sentencing, Petitioner filed a direct appeal with

the Pennsylvania Superior Court. His conviction and sentence were affirmed on December 6, 2000. He thereafter filed a petition for allowance of appeal with the Pennsylvania Supreme Court that was denied on June 19, 2001. As such, for purposes of calculating the federal limitations period, Petitioner's conviction became final ninety (90) days thereafter, or September 17, 2001, the time during which he could have filed a petition for writ of certiorari with the United States Supreme Court. See LaCava v. Kyler, 398 F.3d 271, 174 (3d Cir. 2005). The one-year period in which Petitioner could seek federal habeas corpus relief began to run on this date, affording Petitioner until September 17, 2002, to file any federal habeas petition.

This one year limitations period became tolled as of the filing of Petitioner's first PCRA petition on June 5, 2002. Only "properly filed" petitions will toll the running of the statute of limitations. See Satterfield v. Johnson, 434 .3d 185, 194 (3d Cir. 2006). A petition is proper when it is filed within one year of the date the judgment becomes final, unless certain exceptions apply. See 42 Pa. C.S.A. § 9545(b)(1). Petitioner waited almost 8½ months after his conviction became final before filing his PCRA petition. As such, following exhaustion of this petition in the state courts, he would have approximately 105 days remaining of his 365 days within which to file his federal habeas petition.

As previously set forth, the Pennsylvania Superior Court affirmed the dismissal of Petitioner's PCRA petition on March 17, 2005. However, because counsel failed

to provide Petitioner timely notice of this decision, he filed a pro se petition for allowance of appeal nunc pro tunc on June 28, 2005.  Without reiterating all of the procedural history previously set forth, on December 15, 2009, the Pennsylvania Superior Court permitted Petitioner to file the nunc pro tunc allowance of appeal with the Pennsylvania Supreme Court.  The petition for allowance of appeal was filed on February 24, 2010 with the Pennsylvania Supreme Court, and denied on August 27, 2010.  As such, Petitioner's remaining 105 days on the limitations period for filing his federal habeas petition began to run again on this date, and would expire approximately December 10, 2010.  The instant petition was filed on September 21, 2010, and therefore is timely.

## III.   Standard of Review

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-8 (1991).  Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-8; see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

Before a federal court can review the merits of a state prisoner's habeas petition, it must determine whether the petition has met the requirements of exhaustion.  Relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant.  See 28 U.S.C. § 2254(b)(1).  The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.  See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999).  Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts."  Castille v. Peoples, 489 U.S. 346, 351 (1989).  To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted."  McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999)(citations omitted).  While the petitioner need not cite "book and verse" of the federal Constitution, Picard v. Connor, 404 U.S. 270, 277 (1971), he must "give the State 'the opportunity to pass upon and correct'

alleged violations of its prisoners' federal rights" before presenting those claims here. Duncan v. Henry, 513 U.S. 364, 365 (1995)(quoting Picard, 404 U.S. at 275).

For claims that were not fairly presented to the state court, but for which "further state-court review is clearly foreclosed under state law, exhaustion is excused on the ground of futility." Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001). Although futile claims are deemed exhausted for federal habeas purposes, such claims are also procedurally defaulted; federal courts are not permitted to evaluate the merits of procedurally defaulted claims unless the petitioner "establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse the default." McCandless, 172 F.3d at 260; see also Coleman v. Thompson, 501 U.S. 722, 750-51 (1991). To demonstrate "cause" for a procedural default, the petitioner must show that "'some objective factor external to the defense ... impeded [his or her] efforts to comply with the [state] procedural rule.'" Leyva v. Williams, 504 F.3d 357, 366 (3d Cir. 2007)(quoting Slutzker, 393 F.3d at 381); Murray v. Carrier, 477 U.S. 478, 488 (1986). The petitioner may demonstrate prejudice by establishing the existence of errors that "worked to his actual and substantial disadvantage, infecting the entire proceeding with error of constitutional dimensions." Murray, 477 U.S. at 494. Finally, a federal court may excuse procedural default when its failure to review the claim will result in a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger, 266 F.3d at 224. The miscarriage of justice exception

applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

Once a court has determined that the exhaustion requirement is met, and therefore review of the issues presented in a habeas petition on the merits is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d). That section states, in relevant part, that exhausted claims that have been adjudicated on the merits by the state courts are subject to review under the standard of whether they are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") places the burden on a petitioner to make this showing. Williams v. Taylor, 529 U.S. 362 (2000).

The United States Court of Appeals for the Third Circuit has set forth the following description of the framework for analysis required under § 2254(d):

> Consistent with Supreme Court precedent, we read § 2254(d) to require three distinct legal inquiries. See, e.g., Harrington v. Richter, ___ U.S. ___, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011). The first is whether the state court decision was "contrary to ... clearly established Federal

15

law, as determined by the Supreme Court of the United States." § 2254(d)(1). The second is whether the state court decision "involved an unreasonable application of" such law. § 2254(d)(1). And the third is whether the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented" to the state court. §2254(d)(2).

The test for § 2254(d)(1)'s "unreasonable application of" clause is as follows: "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Rompilla v. Beard, 545 U.S. 374, 380, 125 S.Ct. 2456,162 L.Ed.2d 360 (2005)(quoting Wiggins v. Smith, 539 U.S. 510, 519, 520, 123 S.Ct. 2527, 156 L.2d.2d 471 (2003)). For purposes of § 2254(d)(1), "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)(internal quotations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 75-76, 123 S.Ct. 1166 (quoting Williams v. Taylor, 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. Andrade, 538 U.S. at 75, 123 S.Ct. 1166.

The test for § 2254(d)(1)'s "contrary to" clause is whether the state court decision "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." Brown v. Payton, 544 U.S. 133, 141, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005)(citing Williams, 529 U.S. at 405, 120 S.Ct. 1495, and Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002)). Of course, a state court's resolution of a question that the Supreme Court has not resolved can be neither contrary to, nor an unreasonable application of, the Court's precedent. See Kane v. Garcia Espitia, 546 U.S. 9, 126 S.Ct. 407, 163 L.Ed.2d 10 (2005).

16

> The test for § 2254(d)(2)'s "unreasonable determination of facts" clause is whether the petition has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. See Rice v. Collins, 546 U.S. 333, 338-339, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006)("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'")(quoting § 2254(e)(1))(citing Miller-El v. Dretke, 545 U.S. 231, 240, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005)); see also Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009)("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence."). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. Cullen v. Pinholster,___U.S.___,___, 131 S.Ct. 1388, 1401-03, ___L.Ed.2d___ (2011).

Rountree v. Balicki, 640 F.3d 530, 537-38 (3d Cir. 2011).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if a court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. Porter, 276 F. Supp. 2d at 296; see also Williams, 529 U.S. 362 at 408-09.

Relief can only be granted if the petitioner shows that the state court's decision satisfies one of the three tests as set forth above in <u>Rountree</u>. With the above legal framework in mind, the Court will now address the claims in the instant habeas petition.

## IV.   Discussion

### A.   Bailey claim

Petitioner alleges that the Commonwealth committed prosecutorial misconduct in violation of his Sixth and Fourteenth Amendment rights by failing to disclose the existence of a deal between the Commonwealth and Verna Russman related to her testimony against her co-defendants. Russman was a key witness for the Commonwealth. Petitioner claims that he raised this argument in the context of an ineffective assistance of counsel claim in his first PCRA and because he had no evidence to support his claim at the time, that the ineffectiveness claim was dismissed as lacking merit.

In Petitioner's third PCRA petition, he, for the first time, raised the matter in the context of a prosecutorial misconduct/<u>Brady</u> claim. He contends that he had not learned of evidence of the existence of a deal between the Commonwealth and Russman until the District Attorney disclosed certain information during a June 9, 2006 evidentiary hearing held in one of his co-defendant's PCRA proceedings. According to Petitioner, the DA stated that prior to Petitioner's trial he had reached

the conclusion that he would "recommend leniency" for Russman "depending on how she testified" in Petitioner's trial, and made several other disclosures that Petitioner believed provided him with evidence of a deal.

The PCRA court addressed the timeliness of this claim at length in their opinion of September 30, 2008, and found it to be time-barred. Even aside from the time-bar, they found the claim to have been previously litigated in the first PCRA. Although it was set forth as an ineffective assistance of counsel claim, the PCRA court found it to be "couched" in terms of prosecutorial misconduct. However, when Petitioner appealed his first PCRA to the Pennsylvania Superior Court, he failed to include this issue, and therefore failed to exhaust the claim. The PCRA court finally stated that even if the claim were not time-barred or previously litigated and unexhausted, it was still without merit.

In appealing the PCRA court's decision with respect to the third PCRA, the Superior Court never addressed the Brady claim because the court found that Petitioner's appellate rights to the Pennsylvania Supreme Court with respect to the first PCRA should be reinstated. All remaining claims raised in the third PCRA were dismissed without prejudice to any ability Petitioner had to pursue them in a subsequent PCRA petition. Petitioner thereafter attempted to raise the Brady claim in a fourth PCRA petition, but the petition was dismissed as untimely. The Superior Court affirmed this ruling on appeal. Based on the foregoing procedural history,

Respondent maintains that the <u>Brady</u> claim raised in the instant petition is procedurally barred.

The Pennsylvania state courts have made it clear that the time limitations set forth in the PCRA are jurisdictional. <u>Commonwealth v. Fahy</u>, 558 Pa. 313, 737 A.2d 214 (1999); <u>Commonwealth v. Banks</u>, 556 Pa. 1, 726 A.2d 374, 376 (1999). "Unlike a statute of limitations, a jurisdictional time limitation is not subject to equitable principles such as tolling except as provided by statute. Thus, the filing period is only extended as permitted; in the case of the PCRA, the time limitations are extended upon satisfaction of the following exceptions:

> (i)  The failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii)  The facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) The right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time provided in this section has been held by that court to apply retroactively.

§ 9545(b)(1)(i)-(iii). In raising the <u>Brady</u> claim in his fourth PCRA petition, to avoid the statutory bar, Petitioner argued the application of the exceptions set forth in (i) and (ii) in the state courts. (Doc. 25-5 at 30-32.) His arguments were found to be without merit by the trial court. On appeal, the Superior Court affirmed this decision.

The state courts' findings that the exceptions did not apply in Petitioner's case are clearly supported by the record. As such, Petitioner is barred from proceeding further in state court with respect to his Brady ground.

In order to have this court consider the merits of his claim, Petitioner must show "cause and prejudice" or a "fundamental miscarriage of justice" to excuse his default. His arguments in support of cause for his default are unconvincing for many of the same reasons rejected by the state courts, and he has not demonstrated that a failure to review his Brady claim would result in a fundamental miscarriage of justice. Consequently, he is precluded from pursuing the Brady argument in the pending federal habeas corpus petition.

However, pursuant to 28 U.S.C. § 2254(b)(2) an application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State. As such, even evaluating the Brady claim on the merits, the court finds it to be without merit for the following reasons.

A federal due process claim based on the prosecution's withholding of or failure to produce evidence is known as a "Brady claim" originating in the United States Supreme Court holding in Brady v. Maryland, 373 U.S. 83 (1963). Brady held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or punishment,

irrespective of good or bad faith of the prosecution." See Brady, 373 U.S. at 87. Evidence is material for purposes of Brady where a reasonable probability exists that the outcome would have been different had the evidence been disclosed. Riley v. Taylor, 277 F.3d 261, 301 (3d Cir. 2001)(en banc). In order to determine whether a Brady violation has occurred, courts are instructed to determine whether: (1) the evidence at issue is favorable to the defendant, either because it is exculpatory or impeaching in nature; (2) the evidence was willfully or inadvertently suppressed; and (3) prejudice has resulted from this suppression. See Banks v. Dretke, 540 U.S. 668, 691 (2004)(citing Strickler v. Greene, 527 U.S. 263, 281-82 (1999); Lewis v. Horn, 581 F.3d 92, 108 (3d Cir. 2009). All three parts of this inquiry must be satisfied in order to find that a Brady violation exists.

Petitioner maintains that Verna Russman was promised that she would receive consideration in exchange for her testimony at trial. In reviewing the relevant portions of the record in this case, including the testimony presented at the PCRA hearing of December 10, 2007, as cited by the court in its decision of March 25, 2011, (Doc. 25-5), and the relevant portions of the September 8, 2008 PCRA hearing transcript (Doc. 28-8), there was no discussion or agreement with respect to Russman receiving favorable sentencing in exchange for her testimony. Both of Russman's attorneys testified at Petitioner's December 10, 2007 PCRA hearing. When asked by the District Attorney whether leniency was ever promised to Russman for her

testimony, Attorney Levy responded in the negative. When questioned about this same issue, Russman's other attorney, Gregory Mousseau, also stated that there was never a discussion, agreement or deal for favorable testimony in exchange for Russman's testimony, and that he was told many times by the District Attorney that he could not promise anything to Russman. Moreover, when the District Attorney was questioned about this issue at the PCRA hearing for one of Petitioner's co-defendants, the District Attorney stated that he did not know whether he was going to recommend Russman for leniency when she testified against the co-defendant, because it all depended on how she testified, and this was one of the reasons he would not discuss a deal with her until subsequent to her testimony. (See Doc. 25 at 28.)

Based on the foregoing, the court finds that Respondent's position that there were never any discussions, agreements or deals with Verna Russman to be supported by the record in this case. As such, Petitioner's Brady claim is without merit.

## B.    Unconstitutional Jury Panel

Petitioner contends that his constitutional rights were violated in that the panel from which his jury was selected was not representative of a fair cross section of the community, thereby denying him equal protection of the law and a fair trial. He claims that he and his co-defendants were African American, as was the victim. He argues that since the entire jury panel was Caucasian, African Americans were not fairly and reasonably represented in his panel. In support of his claim he avers that

based upon the low percentage of African Americans comprising the population in Carbon County, it was impossible to have a fair cross section on the jury representative of Pennsylvania given the racial composition of Carbon County.

Respondent first maintains that Petitioner has not "fairly presented" this issue to the state courts and that the issue is unexhausted and procedurally defaulted. The court disagrees. In raising this issue before the Pennsylvania Superior Court on direct appeal, he maintained that he was denied a "fair trial" due to an unconstitutional jury panel. He raised this issued before the Pennsylvania Superior Court on direct appeal. The Superior Court affirmed the judgment of conviction and sentence. Petitioner was not required to pursue this matter to the Pennsylvania Supreme Court for purposes of exhaustion.

"Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." Batson v. Kentucky, 476 U.S. 79, 86 (1986). A defendant has no right to demand that members of his race be on the jury which tries him, but he does have a right to expect that the state will not deliberately and systematically exclude members of his race from the jury panel and from the juries ultimately drawn from those panels. Alexander v. Louisiana, 405 U.S. 625 (1972).

A prima facie violation of the Equal Protection Clause on the grounds that members of the defendant's race have been impermissibly excluded from the venire is

made upon a showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. Batson, 476 U.S. at 93-94. A prima facie case can be shown if: (1) the group allegedly excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such people in the community; (3) this under- representation is due to systematic (meaning caused by or inherent in the system) exclusion of the group in the jury selection process. Duren v. Missouri, 439 U.S. 357 (1979)(citing Taylor v. Louisiana, 419 U.S. 522 (1975).

Petitioner raised this issue on direct appeal to the Pennsylvania Superior Court. In analyzing the claim, the state court focused on the necessity of Petitioner showing that the procedures utilized by the trial court were likely to result in juries unrepresentative of a cross section of the community, or that said procedures have continually failed to represent certain individual groups over a period of time. (Doc. 28-1 at 12-14.) In finding no evidence that the trial court's selection process was flawed so as to systematically exclude African American jurors, the court cited to the evidence in the record establishing that the trial court instructed the jurors that race, religion, ethnicity, occupation and the like could not be considered when arriving at a verdict. The trial court made an inquiry as to whether any of these factors might effect the juror's decision. Every prospective juror indicated that it would not, with the exception of one juror who was otherwise disqualified from service because she

admitted that she had formed a fixed opinion with regard to the incident.  She was

disqualified from service on this basis.  No further racial bias questions were found to

be necessary since the only juror who answered affirmatively with respect to the

above factors affecting their decision was already disqualified.  The remainder of the

prospective jurors had indicated race, among other factors, would not influence their

decision as to guilt or innocence.  Accordingly, further extensive racial questioning

was found to be unnecessary.  Petitioner's petition for allowance of appeal was

denied by the Pennsylvania Supreme Court on June 19, 2001.

Based on the record, this court cannot say that the state court's rejection of

Petitioner's claim was contrary to, or involved an unreasonable application of the

clearly established federal law set forth above.  The record supports the state court's

determination that there was no evidence of purposeful discrimination in the selection

of the venire, or a deliberate and systematic exclusion of members of Petitioner's race

from his jury panel.  He is entitled to an impartial jury panel, not necessarily a

member of his race on that panel.  Further, this is not a case where African-Americans

were stricken from the panel by the Commonwealth.  Also noteworthy is the fact that

this case did not involve a situation where the victim and Defendants were of a

different race/ethnicity.  Both the victim and Defendants were African-Americans.

For these reasons, this ground is found to be without merit.

### C.   Audiotape Evidence

Petitioner also argues that he was denied his rights under the Sixth and

Fourteenth Amendments when the trial court abused it's discretion by excluding

relevant and material audiotape evidence.  Specifically, he argues that he was denied

a fair trial when the trial court denied his request to play the audiotaped police

interview of Verna Russman conducted the day after the shooting.  (Doc. 19, Am. Pet.

at 4.)  While the court allowed the defense to refer to the written transcript of

Russman's interview with the police, the defense was precluded from playing the

actual taped interview.  By doing so, Petitioner claims he was prevented from

impeaching this eyewitness and attacking her credibility by allowing the jury to

accurately assess her demeanor.  They were unable to hear the inflections in her voice

and/or the pauses in her responses to the police.  (Id. at 25.)  By denying the request

of the defense to play the tape, Petitioner claims he was deprived of the right to cross-

examine this key witness.

In addressing this issue on direct appeal, the Pennsylvania Superior Court

emphasized its narrow scope of review with respect to state evidentiary issues.  (Doc.

28-1 at 16.)  The court found that although the request to play the audiotape was

denied, the defense was given a complete opportunity to cross-examine Russman and,

in fact, did question her on the inconsistencies in the prior taped statement she had

given to the police.  As such, there was no abuse by the trial court in excluding the

27

tape. Further, the record demonstrated that Petitioner had great latitude in questioning her on cross-examination with respect to her demeanor on the day of the police interview.

"Admissibility of evidence is a state law issue." Wilson v. Vaughn, 533 F.3d 208, 213 (3d Cir. 2008)(citing Estelle v. McGuire, 502 U.S. 62, 72 (1991). As the Supreme Court recently reiterated, "we have repeatedly held that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" Waddington v. Sarausad, ___ U.S. ___, ___ n. 5, 129 S.Ct. 823, 832 n. 5, 172 L.Ed.2d 532 (2009)(quoting Estelle, 502 U.S. at 67-68).  Thus, to the extent this claim presents a state law issue involving the admission of evidence it would not be reviewable in federal habeas corpus.   However, Petitioner's claim could be viewed as raising his rights under the confrontation clause of the Sixth Amendment. Therefore the court will address the merits of this claim.[4]

The constitutional nature of the right to question witnesses is well established. An accused's Sixth Amendment right "to be confronted with the witnesses against him" is "incorporated into the Fourteenth Amendment and therefore available in state

---

[4] In pursuing his direct appeal, Petitioner speaks in terms of being denied a fair trial because his right to cross-examine Russman was undermined.  While not explicitly saying so, the factual and legal substance of Petitioner's claim attributes to the state courts a denial of his right to confront Russman.  As such, we find it fairly presented to the state courts.  Even if were not, this court can deny a habeas corpus claim on the merits, notwithstanding the failure of the Petitioner to exhaust his available remedies. See 28 U.S.C. § 2254(b)(2).

proceedings." Olden v. Kentucky, 488 U.S. 227, 231 (1988).  The right to confront

witnesses includes the right to conduct reasonable cross-examination.  Id.

Based upon the record before the court, we find that the state court's finding

was not contrary to, or did not involve an unreasonable application of, clearly

established Federal law.  The state court made a reasonable determination of facts in

light of the evidence, and properly applied state law that comports with Federal law.

The defense was allowed to extensively cross-examine Russman with the transcript of

the taped police interview.  For these reasons, this ground is without merit.

## V.    Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a

certificate of appealability ("COA"), an appeal may not be taken from a final order in

a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has

made a substantial showing of the denial of a constitutional right.  28 U.S.C.

§ 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of

reason could disagree with the district court's resolution of his constitutional claims

or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322 (2003).

There is no basis for the issuance of a COA.  An appropriate order is attached.